J. MOTT SMITH, E. O. HALL and S. B. DOLE, Trustees of Estate of W. C. Lunalilo, deceased, *vs.* A. W. HAALILIO, *et al.*

IN EQUITY.

DECISION RENDERED AUGUST 28, 1880. NOT HITHERTO REPORTED.

HARRIS, C.J., JUDD AND McCULLY, JJ.

The testator by will, after certain life estates were disposed of, devised all his estate to trustees, directing them to sell and invest the proceeds until the aggregate sum should amount to $25,000, and then to expend this sum in the erection of a building for certain charitable purposes. The estate realized much more than this sum.

Held, that the alleged heirs of testator had no claim on the residue after the charity was established.

OPINION OF THE COURT, BY HARRIS, C.J.

His late Majesty King Lunalilo left a Will, the third clause of which reads as follows:

" From and after the decease of my devisees above named, to wit, Charles Kanaina my father, and His Majesty Kamehameha the V., and in case I shall die without issue lawfully begotten, I give and devise all of the real estate of which I may die seized and possessed to three persons to be nominated and appointed by a majority of the Justices of the Supreme Court or the Court of the highest jurisdiction in these Hawaiian Islands, to be held by them in trust for the following purpose, to wit, to sell and dispose of the said real estate to the best advantage, at public or private sale, and to invest the proceeds in some secure manner until the aggregate sum shall amount to twenty-five thousand dollars, or until the sum realized by the said trustees shall, with donations or contributions from other sources, amount to the said sum of twenty-five thousand dollars: then I order the trustees (to be appointed as aforesaid) to expend the whole amount in the purchase of land and in the erection of a building or buildings on the Island of Oahu, of iron, stone, brick or other fire-proof material, for the use and accomodation of poor, destitute, and infirm people of Hawaiian (aboriginal) blood or extraction, giving preference to old people, upon such terms, rents or charges as to the said majority of the Justices of the Supreme Court, or the Court of the highest jurisdiction in these Hawaiian Islands, shall seem proper ; and I hereby authorize any two of the said trustees (to be appointed as aforesaid) to act in all matters connected with the trust, and I also authorize a majority of the said Justices, as aforesaid, to require accounts from the said trustees, to remove them from the said trust, and their places to fill at pleasure; but in case sufficient buildings shall have been provided for the use and accomodations of poor, destitute and infirm Hawaiians as aforesaid, then I hereby order and direct that the said trustees shall apply the net rents, issues and profits arising from the principal sum realized from the said real estate, when sold as aforesaid, towards maintaining the said buildings in repair, in their improvement and towards the support and maintenance of the inmates aforesaid, as in the opinion of the said trustees shall seem best."

41

The bill in this case sets forth that the orators (trustees under the said will) have sold and disposed of a portion of said trust estate, whereby they have realized more than the sum of twenty-five thousand dollars, and they still have possession of a large amount of said estate undisposed of. And the bill further sets forth that the defendants, being heirs of his said Majesty, Lunalilo, claim that they are entitled to all the residue of the said trust estate over and above the sum of twenty-five thousand dollars, and that such residue should be paid, transferred, and delivered over to them as such heirs ; and the bill further states that the said defendants threaten suits against the orators for the purpose of enforcing such claims, and the orators ask the Court to determine whether such claims of the said heirs are just, and if any such claims should ˙be found to be unjust they further pray that the said defendants may be enjoined in the premises. The defendants, or most of them, filed answers admitting the statements in the bill, and averring that they do claim the residue over and above the twenty-five thousand dollars as in the bill set forth.

The Will in question is dated 7th June, 1871, and was therefore made at a time when there can scarcely be said to have been any probability that the testator would have ever succeeded to the Royal Authority in this country. The will itself took notice of every person whom the testator regarded as akin to himself. This is a matter of such public notoriety as to require us to take judicial cognizance of it in a man of his rank, being at the time of the making of the will a Prince of the land, and at the time of his death, the King. He was ·unmarried, but devised his estate to his children in case he should marry and have children ; then to his father, Charles Kanaina ; and then to his cousin, Kamehameha V., and failing him to the charity in contemplation. The present defendants have come ˙in as heirs of Charles Kanaina, and however more or less certainly they may have established their relationship to Charles Kanaina in a distant way, they for the most part have failed to prove that Kanaina himself during his lifetime recognized the connection ; and it is certain that the deceased King never

recognized in the most distant way the relationship of any except two of the claimants ; and for those two, so far as he recognised any connection, it was through his mother's line and not through his father's.   All this tends to throw light upon the intention of the testator.   The contingency or contingencies for which he was providing actually occurred.   His cousin, Kamehameha V., died before he did ; he himself died a little over a year afterward, unmarried, and leaving no children, and his father enjoyed the property during his lifetime.   So that the devise to the trustees provided for in his will took effect.

Now what did he devise to these trustees ?   "All the real estate of which I may die seized or possessed."   And what did he require them to do with it ?   " To sell and dispose of the said real estate to the best advantage."   Thus it will be seen that it did not direct them to sell a part of the real estate, but the whole of it.   From this it follows that the fee of the real estate is in these trustees and in nobody else.   And he further directs them to "invest the proceeds," not a part of the proceeds but the whole of them, " in some secure manner until the aggregate sum shall amount to twenty-five thousand dollars, or until the sum realized by the said trustees shall, with donations or contributions from other sources, amount to twenty-five thousand dollars."   From all this it is evident that the testator did not imagine that his estate after he had done with it, and after his debts were paid, and his father had done with it, would amount to more than twenty-five thousand dollars.   He even appears to have thought that it would not amount to so much ; that it would require careful nursing and aid from other people.

But as he was afterwards elected King, the situation of his estate was better at the time of his decease than it was at the time he made his will, so that at the time of his death, as it appears from the records of the Court, there were no debts of any consequence to pay out of his estate ; and yet, though he made a codicil of his will just previous to his death, he did not alter or restrict the devise already made in this respect.   It is true that the fourth article of the codicil reads as follows :   " My will is that article third of my said will be modified as follows : if

the avails of the real estate when sold, after the decease of my father, shall amount to more than twenty-five thousand dollars, then and in that case I direct my trustees (as aforesaid to be appointed) to invest the excess of the avails of the real estate over and above the sum of twenty-five thousand dollars, and to apply the net issues and income arising therefrom towards maintaining the said buildings, to be erected as in my will directed, in repair, and in the support and maintenance of the inmates thereof, as in the opinion of the trustees aforesaid shall seem best."

This would have been conclusive of the whole subject. But inasmuch as on an issue presented before a jury they did not find that this article had been read to the testator after it had been copied on the codicil, and therefore was not sufficiently proved, we are obliged to treat it as no part of the will, and hence we say that the codicil did not alter his will. Again, the value of the property has increased subsequent to the death of the testator infinitely beyond what he could have anticipated in his most sanguine moments, and it is very doubtful whether if it had so happened that testator's father had died previous to his own decease, so that the property had fallen into the hands of these trustees and had been sold immediately on the testators decease, it would have realized any considerable sum above the twenty-five thousand dollars. And again, he says : " In case sufficient buildings shall have been provided for the use and accommodation of poor, destitute and infirm Hawaiians, as aforesaid, then I hereby order and direct that the said trustees shall apply the net rents towards maintaining the said buildings in repair, in their improvement and towards the support and maintenance of the inmates aforesaid as in the opinion of the said trustees shall seem best." Thus it will be seen again that he directs the whole of the principal sum realized from the sale of said real estate to be applied as stated.

Certainly the testator has sufficiently expressed his intention to dispose of his estate for this charity ; and it has frequently been decided "that the general purpose would be enforced by the Court to the exclusion of any claim of the next of kin to

take under a resulting trust." (See Hill on Trustees, pp. 702, 703, and the cases there cited. Side-page 451.)

We do therefore adjudge that the claims of said heirs, as set forth in the bill and answer, are not just ; a writ of perpetual injunction will issue enjoining and restraining the defendants from bringing any action in the premises, and a decree to that effect will be signed on presentation.

*A. S. Hartwell* and *S. B. Dole*, for the orators.

*E. Preston*, *W. C. Jones* and others, for the respondents.